REBECCA TIMMONS v. C. C. HANKS.

**Title by Adverse Possession.**

Where land was patented to A in 1839, and in the year 1852 J,
claiming under the patent, entered on the land and sold it to C, who
as early as 1854 cultivated and fenced it, had the boundaries marked
and sold and conveyed it to J, in 1866, who has held it by herself
and tenants ever since that time until suit entered against her in
1885, J has a good title by adverse possession and will not be dis-
turbed therein.

APPEAL FROM WOLFE CIRCUIT COURT.

October 10, 1885.

OPINION BY JUDGE PRYOR:

In the original action by Kinkead to enforce his lien for the pur-
chase-money which his vendee resisted, the right of recovery, on
the ground that the present appellant was entitled to the land by

reason of a superior title, seems to have been disposed of without giving to the appellant the opportunity of making her claim good. She was then in possession of the land, but the proceeding on the part of the vendee of the land to have the title determined as between the vendor and the appellant was dismissed at his instance, and then no obstacle existed to prevent the sale.

The chancellor below, or rather the parties to that action, seem to have recognized the right of the appellant, as the judgment directed first the land to be sold about which there was no dispute and then the land claimed by those holding adverse titles. Congleton evidently became satisfied with the effort of his vendor to sell and endeavored as far as possible to remove the obstruction he had presented in the way of enforcing the lien, viz., the title of Mrs. Timmons, by dismissing her from the case. Congleton says he knew nothing of the order, but the record shows that appellant, although in possession, if Congleton's pleadings are true, is left with her title undisturbed, and the conduct in that case throws much light on the question as to the possession of the land in controversy. Hanks seems to have purchased this land at commissioner's sale, and by his petition and amendments, the appellant, being as he alleges still in possession, is invited once more to assert her title. She appears in the last case, which is the record before us, and shows the nature of her claim; but before the question of title is determined that there is another compromise by which Hanks is released from his bonds and the case referred to the commissioner, who hears the statement of C. N. Hanks and reports back to the court, and appellant is adjudged to have no title.

Now it is evident that the litigants in this case were in dread of appellant's claim, and the conduct of the two cases to say nothing of the testimony conduces to show title in the appellant. The land in controversy was patented to one Nichols in the year 1839, and while the land may have been included in the boundary of the elder patent it is apparent that in the year 1852, Johnson, claiming under the Nichols patent, entered on the land and sold it to Peter Cress, who as early as 1854 had cultivated and fenced up about sixty acres of this land. They claimed to a well defined and marked boundary with an open adverse claim. Cress had the land surveyed and the lines of the Nichols patent plainly marked. The plaintiff, appellant here, purchased it in 1866 of Cress, and has held it by herself

and tenants since that 'time. She was in the possession by her tenants of sixty or seventy acres included when the judgment was rendered against her. Nor are we able to see where there was an entry under the elder patent prior to the entry by Johnson. If there was an entry on the land enforced by the elder patent outside of the land in dispute when it (the latter) was in the adverse possession of another, it did not break the possession of the one making the first entry.

In fact the question of possession and the right to possession was settled in a suit of forcible entry and detainer, between the appellant and a party who claimed to be the tenant of Congleton. The latter never in fact had any possession. He attempts to show an entry while Cress was on the land, or perhaps before, but the character of the entry and the nature of his testimony indicated clearly that it was an attempt to oust Cress. The question in this case is as to the extent of recovery by Mrs. Timmons, the appellant. As we understand the record, it is one hundred ninety-five acres that is embraced by the Nichols patent, as reported by Swango, the surveyor and commissioner, and filed in the court below November 30, 1880. This land the appellant is entitled to as against the appellees.

It is claimed in the brief of appellees that there was collusion between the appellant and Hanks to defeat the claim of Kinkead. If collusion existed it was between Hanks and the appellee, but we think it never existed. The appellant claimed this land and was in the possession long before Hanks made his purchase. Her claim was being carefully avoided in the very action under which Hanks purchased, and in the present suit, looking to the irresistible result of the contest with Hanks, those representing Kinkead release him from liability on his bonds, have the decree of sale to Hanks confirmed, and then require Hanks to reconvey to them. Such action is not to be approved by the chancellor, and on the return of the cause a judgment is directed to be entered for the one hundred ninety-five acres of land and the suit dismissed as to Mrs. Timmons at the cost of the appellees.

Judgment *reversed* and remanded.

*B. F. Day, for appellant.*

*H. C. Lilly & Sons, for appellees.*